**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KEARON LEHMAN,              *
         Plaintiff

                        *

   V.

                        *     CIVIL NO. SKG-10-2160

MICHAEL ASTRUE,
Commissioner of          *
Social Security,

                        *

         Defendant.

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Plaintiff, Kearon Lehman, by his attorneys, Frederick A. Raab, and Mignini & Raab LLP, filed this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). 42 U.S.C. § 405(g).  This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 5; ECF No. 7).

Currently pending before the Court are cross motions for summary judgment. (ECF No. 24; ECF No. 26-1).  No hearing is necessary.  Local Rule 105.6.  For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment (ECF

1

No. 14), DENIES defendant's motion for summary judgment (ECF No. 17), and REMANDS this case for further proceedings consistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 14, 2007, alleging that he became disabled on November 1, 2002 due to back, carpal tunnel, and circulatory problems.  (R. 106, 131). Plaintiff's application was denied both initially and on reconsideration.  (R. 67, 73).  Plaintiff requested and received an administrative hearing, held on May 19, 2009, at which he was represented by an attorney.  (R. 23).  The ALJ issued a decision on July 20, 2009, finding that plaintiff was not disabled.  (R. 10).  The Appeals Council denied plaintiff's request for review on July 15, 2010. The ALJ's opinion is therefore the final decision of the agency. Plaintiff filed this action seeking review of that final decision pursuant to 42 U.S.C. § 405 (g) on August 6, 2010.

## II.  Factual Background

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record, hereby adopts it.  (ECF No. 26-1, 2-5).

### III. ALJ's FINDINGS

In evaluating plaintiff's claim for disability insurance benefits, the ALJ was required to consider all of the evidence in the record and to follow the sequential five-step evaluation process for determining disability, set forth in 20 C.F.R § 416.920(a).[1] If the agency can make a disability determination at any point in the sequential analysis, it does not review the claims further. 20 C.F.R. § 1520(a). After proceeding through all five steps, the ALJ in this case concluded that plaintiff was not disabled as defined by the Act.

The first step requires plaintiff to prove that he is not engaged in "substantial gainful activity."[2]  20 C.F.R. § 416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in substantial gainful activity, plaintiff will not be considered disabled.  Id.  The ALJ in the present case found that plaintiff did not engage in substantial gainful activity during the period

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A) (2004).

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part-time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

from his alleged onset date of November 1, 2002, through his date last insured of December 31, 2007.  (R. 12).

At the second step, the ALJ must determine whether plaintiff has a severe, medically determinable impairment or a combination of impairments that limit plaintiff's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  There is also a durational requirement that plaintiff's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that through the date last insured, plaintiff had the following severe impairments: (1) Lumbar Degenerative Disc Disease status post fusion (2) Cardiovascular and Peripheral Vascular Diseases with hypertension status post stenting, (3) Chronic Obstructive Pulmonary Disease (COPD), (4) Bilateral Carpal Tunnel Syndrome status post bilateral release procedures, and (5) Obesity.  (R. 4).

At step three, the ALJ considers whether plaintiff's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" ("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  Here, the ALJ found that plaintiff "failed to establish by a preponderance of the evidence that his lumbar impairment satisfied the criteria of any applicable listed

4

impairment, specifically Listing 1.04." (R. 16). The ALJ based this opinion on the fact that "the record contains no findings of nerve root or spinal cord compromise, nor any evidence of spinal stenosis resulting in pseudoclaudication." (R. 16). The ALJ further found that the record did not contain sufficient evidence for a finding that plaintiff's ambulatory and breathing problems, coronary and peripheral artery diseases, or carpel tunnel syndrome rose to the level of seriousness required to match any of the listings on the Listing of Impairments. (R. 16-17.).

Before an ALJ advances to the fourth step, he must assess plaintiff's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(a)(4)(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1520(a)(2).

In determining a plaintiff's RFC, ALJs must evaluate the plaintiff's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.152. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the

actual alleged symptoms. 20 C.F.R. § 404.1529(b).  Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 SSR LEXIS 4.  To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. Id.

Here, the ALJ applied the above two-step test to analyze plaintiff's statements regarding pain and ability to function. (R. 18).  He first found that plaintiff's "stated symptoms are attributable to his medically determinable and severe impairments." (R. 18).  At the second step, however, the ALJ found that "the intensity, persistence, and limiting effects of those symptoms on his work-related abilities were not as restrictive as the claimant has asserted for the period at issue herein." (Id.).  Specifically, the ALJ was unconvinced by plaintiff's statements that he could stand for only 5 minutes,

sit for only 15 minutes, and took naps for at least 3 hours every day. (R. 20). In addition, the ALJ found that plaintiff's mother's testimony that plaintiff needed help getting off of the couch and needed to stop 2 or 3 times on walks to her house lacked credibility. (Id.). The ALJ based these findings on the plaintiff's "statements to his family physician in July 2006, February 2007, May 2007, July 2007, and at his last pre-date last insured visit of August 2007, that his only complaint was 'feeling tired all the time.'" (R. 20).

As a result, the ALJ found that plaintiff had the residual functional capacity to perform a range of light work activity. Specifically, the ALJ found that plaintiff could:

> lift up to 10 pounds frequently and 20 pounds on
> occasion, and that he could alternately sit, stand,
> and walk for the duration of an ordinary 8-hour
> workday. The claimant could not climb to or work at
> heights with hazardous machinery, nor could he work in
> environments containing odors, dusts, fumes, gases,
> and/or pulmonary/respiratory irritants. While the
> claimant has no push/pull limitations in any
> extremity, he could not performed prolonged balancing
> or stooping tasks, nor any overhead reaching
> maneuvers; and he was limited to the occasional
> performance of tasks requiring fine manual dexterity.
> Finally, due to the claimant's pain, fatigue, and
> side-effects of his medications, the claimant was
> limited to a range of simple, routine, non-production
> pace unskilled light work. (Id.)

The ALJ based this opinion on plaintiff's daily activities, which are described as "generally active and functional," and upon two state medical consultants who advised that plaintiff

retained the ability to perform a range of light work activity.
(R. 19).

At the fourth step, the ALJ must consider whether plaintiff
retains the RFC necessary to perform past relevant work.  20
C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ noted that
plaintiff's past work as a Deputy Sherriff, a Corrections
Officer, and Feed Store Owner all required a level of capability
above unskilled light work.  (R. 20).  Therefore, plaintiff was
unable to perform any of his past relevant work.  (Id.).

Where, as here, plaintiff is unable to resume his past
relevant work, the ALJ must proceed to the fifth and final step.
This step requires consideration of whether, in light of
vocational factors such as age, education, work experience, and
RFC, plaintiff is capable of other work in the national economy.
See 20 C.F.R. §§ 404.1520(f), 416.920(f).  At this step, the
burden of proof shifts to the agency to establish that plaintiff
retains the RFC to engage in an alternative job which exists in
the national economy.  McLain v. Schweiker, 715 F.2d 866, 868-69
(4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th
Cir. 1980).  The agency must prove both plaintiff's capacity to
perform the job and that the job is available.  Grant v.
Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency
may conclude that plaintiff can perform alternative skilled or
semi-skilled work, it must show that plaintiff possesses skills

that are transferable to those alternative positions or that no
such transferable skills are necessary.  McLain, 715 F.2d at
869.  Here the ALJ found that plaintiff was capable of making a
successful adjustment to work currently existing in the national
economy.  (R. 22).  Specifically, the ALJ found that plaintiff
could successfully work as a Gate Tender, Unarmed Security
Guard, Information Clerk, or Security Guard.  (R. 21).

The ALJ therefore found that the plaintiff was not under a
disability at any time from November 1 2002, the alleged onset
date, through December 31 2007, the date last insured.  (R. 22).


**IV.  STANDARD OF REVIEW**

The function of this Court on review is to leave the findings
of fact to the agency and to determine upon the whole record
whether the agency's decision is supported by substantial
evidence—not to try plaintiff's claim de novo.  King v.
Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must
uphold the Commissioner's decision if it is supported by
substantial evidence and if the ALJ employed the proper legal
standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v.
Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829
F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists
of more than a scintilla of evidence but may be somewhat less
than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642

(4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing."  Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

**V.   DISCUSSION**

Plaintiff raises four arguments on appeal: (1) the ALJ failed to properly consider listing 1.04; (2) the ALJ failed to

properly to analyze plaintiff's obesity, (3) there was not

substantial evidence for the ALJ to conclude that plaintiff

could do a limited range of light and sedentary work, and (4)

the ALJ failed to properly consider plaintiff's pain and his

credibility.  (ECF No. 24, 26, 28, 40).


A.   **The ALJ failed to properly consider listing 1.04**

Plaintiff argues that the ALJ failed to fully explain his

reasoning as to why plaintiff did not meet listing 1.04.  (ECF

No. 24, 26).  Plaintiff cites to Cook v. Heckler, 783 F.2d 1168

(4th Cir. 1986), for the proposition that where there is "ample

evidence in the record to support a determination that the

claimant's impairments meets or equals one of the listed

impairments," the ALJ must identify the relevant listed

impairments and "compare each of the listed criteria to the

evidence of [claimants] symptoms."  Cook, 783 F.2d at 1173.

Plaintiff argues that the ALJ failed to provide a sufficient

comparison of listing 1.04 to plaintiff's symptoms.

In response, defendant argues that the ALJ sufficiently

explained his reasoning as to 1.04, as the ALJ specifically

noted that the record did not show nerve root or spinal cord

compromise, or spinal stenosis resulting in pseudoclaudication.

(ECF No. 26-1, 10).  Further, defendant notes that even this

brief elaboration was not required, as there was not ample evidence on the record to support a determination that Mr. Lehman's impairments met listing 1.04. (Id. at 11). Accordingly, defendant argues, the ALJ was under no obligation to identify the listing and compare the symptoms to the evidence on the record. (Id.).

To meet listing 1.04, a claimant must first demonstrate that they are suffering from a disorder of the spine resulting in the compromise of either (1) the nerve root or (2) the spinal cord. 20 C.F.R. § 404 app. 1. Second, if he can prove the above, he then must show either: (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), (B) Spinal arachnoiditis, or (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.  Id.  The plain language of the listing requires claimants to meet all elements listed. Cf. Sullivan v. Zembley, 493 U.S. 521, 530,(1990) (a claimant must prove that she meets all of the requirements of a

listing), <u>Reynolds v. Astrue</u>, 2012 U.S. Dist. LEXIS 44867 (D. Md. 2012) (claimants must meet all elements listed).

There is some dispute as to whether plaintiff met the requirements of 1.04(A), particularly the requirements of nerve root compromise and compression. Plaintiff points to an October 1 2001 MRI report indicating mild bulging at L4-L5 "in close proximity to the nerve root," which concluded that the findings were consistent with disc herniation "involv[ing] the left L4 nerve root." (ECF No. 24, 27; R. 227). In response, defendant argues that "'close proximity to a nerve root' does not demonstrate nerve root compression resulting in functional compromise," and points to 2002 and 2008 MRIs that showed no definite impingement on a nerve root. (ECF No. 26-1, 10; R. 258, 552-553). The ALJ found that the record does not show nerve root or spinal cord compromise. (R. 16).

Even assuming that the record contains evidence suggesting that plaintiff suffered from nerve root compression, however, it is clear that plaintiff did not meet the other requirements of 1.04(A). On at least three occasions the record indicates that plaintiff had complete range of spinal motion. (R. 247, 457, 750). A November 2001 doctor's report notes that plaintiff has "good range of motion of the lumbar spine." (R. 247). An October 2005 examination also notes a "supple range of motion" in plaintiff's spine. (R. 457). Finally, a March 2009 spine

13

examination noted that plaintiff's range of motion was "normal." (R. 750). As such, there was not ample evidence on the record suggesting that claimant satisfied all the requirements of 1.04(A), particularly the requirement of limitation of motion in the spine.

There are stronger indications in the record, however, that claimant may have met listing 1.04(C) as a result of spinal cord compromise, specifically lumbar spinal stenosis[3] and pseudoclaudication[4]. An October 2001 MRI report describes a "relative narrowing the spinal canal." (R. 227). In addition, while an early 2008 scan notes "no significant central canal stenosis," (R. 552), a scan later in 2008 showed "moderately severe" lateral recess stenosis. (R. 654). In addition, there is evidence that plaintiff suffered from leg pain and mild (but worsening) weakness—indicative of pseudoclaudication—for the eight years prior to 2008. (R. 664). Plaintiff described difficulties standing and noted on his function report that he walked with a cane. (R. 34, 44, 46, 140, 141). Plaintiff's mother described that she would walk with him on the short walks between his house and hers, but noted that he frequently had to stop. (R. 55). These difficulties suggest that claimant may

---

[3] Spinal stenosis is defined as the "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine." Dorland's Illustrated Medical Dictionary at 1770 (32d ed. 2012).
[4] Pseudoclaudication is defined as pain, tension and weakness in the back and lower limbs, generally caused by spinal stenosis. Id. at 369.

have been unable to ambulate effectively under Section 1.00

(B)(2)(b), which defines effective ambulation as the ability to

travel "without companion assistance to and from an place of

employment or school."

In his opinion, the ALJ found that:

> the record contains no findings of nerve root or
> spinal cord compromise, nor any evidence of spinal
> stenosis resulting in pseudoclaudication. The record
> also fails to demonstrate that the claimant was at any
> relevant time unable to ambulate effectively, as that
> term is defined in Section 1.00 (B)(2)(b) of the
> listings of impairments.

(R. 16).  Considering the ample evidence in the record that

claimant suffered from spinal stenosis, experienced weakness and

pain in his legs, and had difficulty walking, the Court finds

this finding to be conclusory without sufficient analysis and

appearing without substantial support in the record.  While some

of the evidence regarding stenosis is conflicting, the

Commissioner, as fact finder, is responsible for resolving

conflicts in the evidence.  The summary finding by the ALJ here

was insufficient.  There was enough evidence on the record

suggesting that plaintiff met listing 1.04 to require that the

ALJ perform a more detailed analysis of the evidence.  The Court

directs the ALJ to perform this analysis on remand.

**B. The ALJ's Failure to Consider Plaintiff's Obesity was Harmless Error**

Plaintiff argues that although the ALJ found plaintiff's obesity to be a severe impairment at step 2 of the sequential evaluation, he failed to explain how plaintiff's obesity affected his ability to perform work-related functions. (ECF 24, 28). Plaintiff asks for a remand for this assessment. (Id.). In response, defendant acknowledges that while the ALJ found plaintiff's obesity to be a severe impairment and noted that he would address it in his RFC assessment, he failed to do so. (ECF No. 26-1, 12). Defendant argues, however, that (1) obesity was implicitly analyzed in the ALJ's RFC findings, and, (2) even if it was not, the error was harmless because plaintiff was not entitled to relief even if obesity had been discussed in the RFC findings. (ECF No. 26-1, 12-15).

Several district courts in the Fourth Circuit have adopted the holding in Skarbek v. Barnhart, 390 F.3d 500, 504, 105 Fed Appx. 836 (7th Cir. 2004), that in cases where obesity is not discussed in an ALJ's RFC, remand is improper when plaintiff fails to show how obesity impairs their ability to perform work activities beyond the limits attributable to other impairments. See, e.g., Childers v. Astrue, 2012 U.S. Dist. LEXIS 52693 (M.D.N.C. Apr. 16, 2012) (denying remand because "[p]laintiff has failed to identify anything in the record, medical evidence

or otherwise, that indicates that her weight affected her ability to perform basic work activities in some manner beyond the limits attributable to her other impairments."); Smith v. Astrue, No. 8:10-cv-2624-CMC, 2012 U.S. Dist. LEXIS 31948 (D.S.C. Jan. 18, 2012) (denying in part because "there is no evidence Plaintiff's alleged obesity ever produced exertional limitations upon Plaintiff's abilities."); Williams v. Astrue, No. 2:11-cv-107, 2012 U.S. Dist. LEXIS 79628 (N.D. W. Va. May 16, 2012) (denying remand and noting that "Plaintiff has not specified how his obesity limits his functioning and exacerbates his impairments."); Moss v. Astrue, No. 2:11-CV-44, 2012 U.S. Dist. LEXIS 57781 (N.D. W. Va. Apr. 25, 2012)(noting that "when appealing an ALJ's decision, the plaintiff must specify how the obesity (1) limits his or her functioning and (2) exacerbates his or her impairments.").

Moreover, opinions of district courts within the Fourth Circuit frequently rely on both Skarbeck and Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006), in holding that a lack of obesity analysis in an RFC may be harmless error if the ALJ relies on doctors' reports that make reference to plaintiff's weight. See, Moss, 2012 U.S. Dist. LEXIS 57781 (finding harmless error because "the ALJ relied on medical evidence that incorporated the effects of the plaintiff's obesity."), West v. Astrue, No. 8:10-1442-DCN 2011, U.S. Dist. LEXIS 116214 (D.S.C.

June 6, 2011)(finding that the "ALJ considered Plaintiff's complaints related to obesity because the ALJ adopted the limitations suggested by Plaintiff's physicians."), Smith v. Astrue, No. 8:10-cv-2624-CMC, 2012 U.S. Dist. LEXIS 31948 (D.S.C. Jan. 18, 2012) (finding that the ALJ properly considered plaintiff's obesity because "the ALJ largely adopted the limitations suggested by Plaintiff's physicians and the consultative examiners.").

Here, plaintiff makes no attempt to demonstrate how obesity inhibits his ability to function beyond his already established impairments; he simply notes that the ALJ failed to assess it when considering his RFC. (ECF No. 24, 28).  In addition, several of the doctors' reports in the record describe plaintiff as overweight, (R. 337) or obese, (R. 432), or recommended that plaintiff follow a low-fat diet. (R. 304).  References are made to plaintiff's height and weight throughout the record, with no suggestion that plaintiff was further limited by his obesity. See Childers, 2012 U.S. Dist. LEXIS 52693 at *25 (declining to remand where "references to Plaintiff's weight and high body mass index appear throughout her medical records, but neither her treating physicians nor consultative examiners attributed any added degree of limitation to these conditions").

Because plaintiff has failed to demonstrate how obesity affects his ability to function, and because the medical

evidence on record incorporated the (seemingly limited) effects
of plaintiff's obesity, the ALJ's failure to reference obesity
in plaintiff's RFC is a harmless error.

## C. The ALJ Lacked Substantial Evidence for his RFC Findings.

### 1. The ALJ Failed to Develop the Record

Plaintiff contends that the record was incomplete because it
did not include any opinion from a treating physician regarding
plaintiff's work-related activities.  (ECF No. 24, 37).  As a
result, plaintiff argues, the ALJ improperly placed significant
weight on the opinion of two non-treating State Agency
Physicians, both of whom found that plaintiff was capable of a
range of light work-related activity.  (Exs. 20 F, 24 F).
Plaintiff argues that the ALJ should have developed the record
to include opinions from treating doctors.

Defendant responds that an ALJ's decision to request
additional information to develop the record is discretionary.
(ECF No. 26-1, 17-18).  Defendant further argues that the ALJ
had sufficient information regarding the plaintiff's condition
to make a decision based on the record as it stood.  (Id.).

It is well established in the Fourth Circuit that an ALJ "has
a duty to explore all relevant facts and inquire into the issues
necessary for adequate development of the record, and cannot
rely only on the evidence submitted by the claimant when that

evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173
(4th Cir. Va. 1986).  The key consideration is "whether the
record contained sufficient medical evidence for the ALJ to make
an informed decision" regarding the claimant's impairment.[5]
Craft v. Apfel, No. 97-2551, 1998 U.S. App. LEXIS 24674 (4th
Cir. 1998); see also 20 C.F.R. § 416.912 (ALJ will make "every
reasonable effort to obtain evidence from your own medical
sources.").

     This requirement does not, however, impose an obligation to
"function as the claimant's substitute counsel." Bell v.
Chater, 1995 U.S. App. LEXIS 14322 (4th Cir. 1995)(internal
citations and quotations omitted).  An ALJ is under no
obligation to supplement an adequate record to correct
deficiencies in a plaintiff's case. Rice v. Chater, No. 94-
2001, 1995 U.S. App. LEXIS 9829, at *5 (4th Cir. 1995)(ALJ "is
not required to act as plaintiff's counsel")(citations omitted).
As such, a remand is appropriate only if the record is so
deficient as to preclude the ALJ from making an educated
decision as to the extent and effects of plaintiff's disability.

     The Court has found no clear standard within the Fourth
Circuit as to when a record is so deficient as to require an ALJ
to make an affirmative effort to develop it.  See Smith v.

---

[5] While this duty is heightened when a claimant is unrepresented by counsel, an
ALJ is also required to develop the record for represented plaintiffs where
the record is insufficient. Fleming v. Barnhart, 284 F. Supp. 2d 256, 272
(D. Md. 2003).

Barnhart, 395 F. Supp. 2d 298 (E.D.N.C. 2005)("there is scant
authority in this circuit . . . [indicating] when the
administrative record is so 'inadequate' as to trigger the ALJ's
heightened duty to . . . supplement the record before rendering
a decision."). At least two district courts in the Fourth
Circuit have, however, addressed similar issues to those
presented here. See Loving v. Astrue, No. 11-411, 2012 U.S.
Dist. LEXIS 134906 (E.D. Va. Sept. 20, 2012); Smith v. Barnhart,
395 F. Supp. 2d 298, 301 (E.D.N.C. 2005).

      In both Loving and Smith, the record contained no opinion from
a treating physician regarding the impact of plaintiff's
impairments on his ability to work.  In Loving, the ALJ relied
heavily on the assessments of non-treating agency physicians,
while giving little weight to plaintiff's treating doctor, a
specialist in rheumatology.  Loving, 2012 U.S. Dist. LEXIS
134906 at *26.  The defense sought to justify this weighting by
emphasizing limitations in the records of plaintiff's
rheumatologist, noting that they included no opinion
establishing the functional limitations of the plaintiff.  Id.
at *25.  The court disagreed, finding that the lack of a clear
opinion from plaintiff's rheumatolgist was not substantial
evidence in support of the ALJ's determination.  The court found
that "[i]f there was uncertainty as to the opinion of the
treating physician, the ALJ had an obligation to seek

clarification and to fully develop the record." Id. at 28.   The
case was remanded with instructions that the ALJ clarify the
opinion of plaintiff's treating doctor.   Id. at 30.

   Similarly, in Smith, while there were treatment notes included
in the record, there was no "medical opinion as to the nature or
severity of plaintiff's impairments" from plaintiff's treating
physician.   Smith, 395 F. Supp. 2d at 304.   Citing to 20 C.F.R.
§ 416.927, which emphasizes the  "unique perspective" of
treating physicians, and noting that treating physicians are
generally given some deference, the court found that "it was
error for the ALJ to fail to use every reasonable effort to
assist plaintiff in obtaining this information as part of her
case record."  Because the "ALJ's written decision is utterly
devoid of any explanation as to why a treating physician's
opinion was not included in the record," the court remanded with
instructions to further develop the record.   Id.

   As the Smith court noted, treating physicians are generally
given more weight than non-treating sources.   20 C.F.R. §
416.927(c)(2).   The regulations note that significant weight is
given because:

        these sources are likely to be the medical
        professionals most able to provide a detailed,
        longitudinal picture of your medical impairment(s) and
        may bring a unique perspective to the medical evidence
        that cannot be obtained from the objective medical
        findings alone or from reports of individual

examinations, such as consultative examinations or
brief hospitalizations.   Id.

As such, ALJs are required to make "every reasonable effort to
obtain evidence from [claimant's medical sources]" for at least
the 12 months prior to the application filing.  20 CFR
416.912(d); see also SSR 96-8p (adjudicator must "make every
reasonable effort to ensure that the file contains sufficient
evidence to assess RFC.").  The "evidence" an ALJ must endeavor
to gather includes not only objective evidence but also a
physician's opinions and statements about treatment.  20 CFR
416.912(b)(2); Smith, 395 F. Supp. 2d at 304.

     A lack of opinion evidence from a treating physician does
not, however, necessarily trigger a duty to develop the record.
This is particularly true in cases such as this, where plaintiff
was represented by counsel.  Felton-Miller v. Astrue, 2010 U.S.
Dist. LEXIS 121943 (E.D.N.C. Oct. 4, 2010)(noting that "this
court does not read Smith to stand for such rigid a proposition
[that an ALJ must gather medical opinion evidence from treating
sources] but rather identifies the duty of care to which a pro
se claimant is entitled.").  If the opinions of non-treating
agency doctors are substantially supported by the objective
medical evidence in the record or plaintiff's statements
regarding pain, the record will likely be sufficient to allow
for a considered opinion on plaintiff's work related abilities.

However, the instant case does not meet these requirements.
Without citing any objective medical findings, the ALJ here put
significant weight on the fact that "[n]o opinion from any
treating source, nor any remark found in the claimant's record
of treatment, has indicated that the claimant at any time lacked
the . . . capacity for sustained work." (R. 19).  Because no
such opinions were in the record, and based on the ALJ's opinion
that claimant was "generally active"[6] in daily life, the ALJ
found the opinions of the State agency medical consultants that
plaintiff is capable of light activity to be "both probative and
persuasive," and accorded them "significant weight in the
determination of this matter." (R. 19).  This finding, in
conjunction with a determination that plaintiff's testimony
lacked credible support in the record, led to the ALJ's
conclusion that plaintiff was capable of performing light work
activity. (R. 20).

The Court finds that this RFC conclusion was not supported
by substantial evidence.  The only medical evidence from a
treating physician cited in support of the RFC analysis is an
absence of medical evidence.  Almost by definition, a <u>lack</u> of
medical opinion evidence cannot be <u>substantial</u> evidence

---

[6] The Court notes that the ALJ's description of claimant's daily activities,
which includes accounts of needing assistance getting into and out of the
bathtub and putting on his socks, using a cane to ambulate, and being unable
to do mildly strenuous chores such as laundry or vacuuming, does not seem to
comport with the common understanding of "generally active." (R. 19).

regarding claimant's work related abilities.  There is no logical connection between such a deficiency and a finding that claimant is not disabled; physicians in the course of everyday treatment do not as a matter of custom provide opinions on their patients' capacity for work.  See Smith, 395 F. Supp. at 304 (noting that ALJs should not expect to find opinion evidence in treating doctors' record, as "they were prepared in furtherance of plaintiff's private medical treatment and not in preparation for her claim before the Commissioner of Social Security."); but see Scott v. Sullivan 898 F.2d 519, 523 (7th Cir. 1990)(finding that where a treating physician denies an affirmative request from claimant's counsel asking for an opinion as to whether claimant meets listing, "negative inferences" may be drawn).  A failure on plaintiff's part to collect such evidence should not be taken as evidence of an ability to perform work related functions.

In the absence of any medical evidence from a treating physician, the ALJ's RFC determination is founded only on the opinions of two non-treating physicians and a general finding that plaintiff is active in daily life.  This is inadequate support.  In making an RFC finding, the ALJ is under an obligation to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence."  Social Security Ruling SSR 96-8p

(emphasis added).  No medical facts were cited here in support of plaintiff's RFC.  Accordingly, the Court finds that the ALJ failed to meet his obligation to ensure that the record contained sufficient evidence to assess plaintiff's RFC.  The Court directs the ALJ on remand to develop the record to include a medical opinion from a treating doctor.[7]

## 2. The ALJ Improperly Considered Plaintiff's Credibility

Subjective claims of pain are evaluated through a two-step process.  First, and ALJ determine whether there is objective evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  This inquiry is not directed towards the intensity or persistence of the pain, but rather on "establishing a determinable underlying impairment."  Id.  After meeting this threshold obligation, the ALJ must then consider

---

[7] Plaintiff has submitted new evidence from his treating doctor to the Court for consideration.  A district court may, in limited circumstances, remand for consideration of new evidence.  Under 42 U.S.C. § 405(g), remand for the consideration of new evidence is appropriate "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  As plaintiff has given no reason for its late submission, the Court finds that he has not met the good cause requirement of 42 U.S.C. § 405(g). See also Rushing v. Astrue, 2008 U.S. Dist. LEXIS 1629 (W.D. Va. 2008)(finding no showing of good cause because "plaintiff fails to set forth an affirmative reason for why he did not attempt to submit the new records to the Appeals Council").  The offer of this new evidence alone is therefore not sufficient for remand.  As the Court has remanded the case for development of the record, however, it is appropriate to review this opinion on reconsideration.

the intensity and persistence of plaintiff's pain, and the extent to which it affects her ability to work.  Id. at 595. This analysis includes an evaluation of the claimant's statements regarding pain, the claimant's medical history, including medical treatment to alleviate pain, and any other evidence relevant to the severity of the impairment, including claimant's daily activities.  Id.

Plaintiff argues that the ALJ "failed to engage in the full requisite two-step analysis, by not fully discussing all the factors at step two." (ECF No. 24, 42).  Specifically, plaintiff contends that "the ALJ fails to discuss claimant's medical history, laboratory findings, any objective medical evidence of pain and medical treatment to alleviate pain," and devotes undue weight to plaintiff's testimony regarding his daily activities.  (Id. at 46). In response, defendant argues that the ALJ properly found that comments by the claimant regarding his daily activities, such as his ability to cook, feed the dog, and sit around and talk, negatively weighed on credibility because they were inconsistent with claimant's assertion of disability.  (ECF No. 26-1, 19).

In his opinion, the ALJ found:

> the testimony of the claimant that he can stand for only about 5 minutes, and that he can sit for no more than about 15 minutes due to back and leg pain, not [to be] generally consistent with or supported by a preponderance of the medical and other evidence,

> including his own Function Report of January 2008.
> Likewise, the claimant's testimony that due to his
> interrupted nighttime sleep and side-effects of his
> medications, he usually takes naps that can last as
> long as 3 hours, also lacks credible support[.] (R.
> 20).

In addition, the ALJ found that the testimony of plaintiff's

mother and wife, who described assisting plaintiff getting out

of bed or up from the couch, was not credible.  (Id.).  In

support, the ALJ pointed to claimant's statements in his January

2008 Function Report, and to claimant's statements to his family

physician in several visits from July 2006 through his date last

insured in December 2007 that his only complaint was "feeling

tired all the time."  (R. 20).

Claimant's Function Report does in places suggest that he

can occasionally perform household tasks that might require

standing or sitting for longer than the 5 or 15 minutes at a

time described in testimony, such as cooking dinner, shopping

(once every 3-5 weeks) and mowing the lawn on a riding mower.

(R. 180-81).  Claimant testified, however, that the ride to the

store only takes 15 minutes, and he notes in the report that as

a result of his condition he eats more frozen meals or gets his

wife to cook for him.  (Id.).  In addition, after describing his

daily activities he notes that "recently I have done less due to

back/spine pain, causing less movement."  (R. 178).  The report

also confirms much of the testimony of his mother and wife, as

claimant describes requiring assistance to dress himself, get
out of the bathtub, get to the bathroom, and getting off of the
sofa or a chair.  (R. 179).

More importantly, the ALJ's suggestion that the claimant's
only complaint from July 2006 through the end of 2007 was
"feeling tired all the time," is contradicted by the record.
Notes from June and July 2007 visits to Dr. Baral describe
complaints of backache, restriction of joint motion, and
stiffness.  (R. 605).  Notes from an August 2007 medical
appointment with Dr. Frey state that plaintiff's "main complaint
is back pain."  (R. 540).  Notes from a December 2007 medical
appointment state that "main issue is chronic back pain," and
"[h]e is not significantly active due to his back."  (R. 539).
In a May 2008 report, Dr. Malak notes "severe (7-8/10)" low back
pain that "developed gradually 6 years ago."  (R. 664).  These
statements regarding pain are supported by findings from Dr.
Malik in 2008 that plaintiff suffered from a central disc
herniation, lateral recess stenosis that was "moderately severe
at L4 and L5" and degenerative disc disease at L2-3, 3-4, 4-5,
and L5-S1.  (R. 654).

Plaintiff's daily functioning report does not substantially
contradict his later testimony, and confirms the testimony of
his wife and mother.  In addition, the primary rationale for the
ALJ's credibility assessment — that throughout 2007 plaintiff

only complained of feeling tired all the time — is contradicted by the record.  As a result, the Court finds that the ALJ erred in assessing claimant's credibility.

### Conclusion

For the reasons set forth above, the Court finds that the ALJ improperly evaluated the listed impairments at step three, failed to properly develop the medical record in making his RFC finding, and also failed to appropriately evaluate the credibility of plaintiff's subjective complaints of pain.  The ALJ's failure to include plaintiff's obesity in his RFC analysis was harmless error.  Accordingly, the Court DENIES plaintiff's motion for summary judgment (ECF No. 16-1), DENIES defendant's motion for summary judgment (ECF No. 20-1), and REMANDS the final decision of the Commissioner for further proceedings not consistent with this opinion.


Date: 2/22/13 _____                          /s/
                                        Susan K. Gauvey
                                        United States Magistrate Judge